UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 21-cv-23960-Bloom/Otazo-Reyes

MARIYAH MAPLE,

     Plaintiff,

v.

CITY OF MIAMI BEACH, *et al*.,

     Defendants.

_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANT CITY OF MIAMI BEACH'S MOTION TO DISMISS**

     Miami Beach Commissioners worried about people's respect and support for the police. ECF 43 at 9. Instead of improving police practices, they passed Ordinance 70-8 to make it unlawful to be within 20 feet of a lawfully acting officer, after a warning, with an intent to "(1) [i]nterrupt, disrupt, hinder, impede or interfere with a law enforcement officer's ability to perform such duty; or (2) [p]rovoke a physical response from a law enforcement officer; or (3) [d]irectly or indirectly harass a law enforcement officer." *Id.* at 8, 10.

     Officers understood this law to allow them to arrest anyone within 20 feet of them after a warning. *Id.* at 10. On the day after her birthday, two years ago, Ms. Maple stood within 20 feet of an officer, received a warning, continued to film the officer, and then reported the misconduct. *Id.* at 10-13, 16. As a result, Miami Beach police officers attacked, arrested, and prosecuted her for violating 70-8. *Id.* at 18, 24. Ms. Maple sued the City of Miami Beach ("Miami Beach") because 70-8 creates a vague standard, overly criminalizes protected speech, and discriminates against certain viewpoints and topics without narrowly serving a legitimate government interest. Miami Beach moves to dismiss Ms. Maple's Third Amended Complaint on the theories that 70-8 is constitutional and that no municipal policy caused Ms. Maple's injuries.

These arguments fail for six reasons. First, Ordinance 70-8 raises First Amendment concerns because it criminalizes speech and expressive conduct that the Eleventh Circuit found protected in *Skop v. City of Atlanta*, 485 F.3d 1130 (11th Cir. 2007). Second, Ordinance 70-8 is overly broad. On its face and in practice, it covers substantially more speech than the First Amendment allows, no state court has interpreted it in a more limited way, and no narrower construction is reasonable or readily apparent. Third, Ordinance 70-8 discriminates based on viewpoint and content because it criminalizes some worldviews and because it cannot be justified without reference to the speech's content. Fourth, Ordinance 70-8 is not narrowly tailored to serve a legitimate government interest because the Supreme Court has already held that less restrictive floating-buffer zones were unconstitutional. Fifth, Ordinance 70-8 is unconstitutionally vague. People have and could interpret it so differently that no ordinary person could understand its limits. Moreover, without any guidelines to limit its scope, it allows, if not encourages, arbitrary and discriminatory enforcement. Sixth, a municipal policy caused Ms. Maple's injuries because 70-8 unconstitutionally sanctioned Miami Beach officers' attack, arrest, and prosecution of Ms. Maple for filming the police and reporting misconduct.

I.     **Argument**

    A.     **70-8 Criminalizes protected speech.**

The First Amendment applies to "pure speech" and "expressive conduct." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1270 (11th Cir. 2004). 70-8 regulates pure speech and expressive conduct directed at the police.

        1.     **70-8 criminalizes pure speech.**

Pure speech consists of words, either spoken or written, not conduct. *Bartnicki v. Vopper*, 532 U.S. 514, 526-527 (2001). In *City of Houston v. Hill*, the Supreme Court struck down a law that made it "unlawful for any person to . . . in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty." 482 U.S. 451, 462 (1987). In coming to this conclusion, the Court held that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers" *Id.* at 461.

The Eleventh Circuit applied *Hill* in *Skop v. City of Atlanta*, 485 F.3d 1130 (11th Cir. 2007). In that case, the plaintiff, Laura Skop, drove home and found a police car blocking her driveway. *Id.* at 1133. The officer had blocked her driveway because a tree had fallen nearby. *Id.* at 1134. He sat inside his car and completed some paperwork. *Id.* at 1133. But Ms. Skop needed

to return home. *Id.* So, she flashed her turn signal, honked her horn, rolled down her window, and eventually exited her car. *Id.* at 1134. Then, she walked over to the police car and tapped on the window. *Id.* The officer rolled down his window, warned Ms. Skop that she was in a dangerous area, and rolled up his window. *Id*. Ms. Skop ignored the warning and tapped the window again. *Id.* The officer "yelled about the downed tree." *Id.* Through the closed window, Ms. Skop requested the officer's name and badge number. *Id.* At this, the officer jumped out of his car and approached Ms. Skop. *Id.* Ms. Skop, having successfully distracted the officer from his paperwork for a moment, said, "This is my driveway, can you please move up a foot?" *Id.* Based on this interaction, the officer arrested Ms. Skop for obstruction. *Id.* The Eleventh Circuit found the officer liable for violating Ms. Skop's constitutional rights because "the idea that Skop's brief inquiry to the officer somehow provided a basis for arrest collides head-on with the First Amendment." *Id.* at 1139.

Miami Beach has turned this unconstitutional behavior into an ordinance, 70-8. That ordinance provides as follows:

> (b) It shall be unlawful for any person, after receiving a warning from a law enforcement officer, to approach or remain within 20 feet of a law enforcement officer engaged in the lawful performance of any legal duty with the intent to: (1) Interrupt, disrupt, hinder, impede or interfere with a law enforcement officer's ability to perform such duty; or (2) Provoke a physical response from a law enforcement officer; or (3) Directly or indirectly harass a law enforcement officer.

ECF 43 at 8.

If *Skop* occurred in Miami Beach, Ms. Skop would have violated every subpart of 70-8: She received two warnings and approached and remained within 20 feet of an officer with the requisite intent. She intended, although briefly, to "[t]nterrupt, disrupt, hinder, impede or interfere with" the officer's lawful duty to complete his paperwork to ask him a question; she intended to provoke a physical response because she wanted the officer to move his car; and, even under the City's exceedingly narrow definition of harassment, ECF 46 at 16-17, she harassed the officer by honking, flashing her lights, tapping on his window, and asking him questions because these acts amounted to "persistent demands" for attention. Because these words and actions qualify as speech and because 70-8 criminalizes them, 70-8 criminalizes speech.

### 2.      70-8 criminalizes expressive conduct.

To determine which conduct is expressive, courts ask "whether the reasonable person would interpret it as *some* sort of message, not whether an observer would necessarily infer a *specific* message." *Harland*, 370 F.3d at 1270. "In answering this question, the context in which a symbol is used for purposes of expression is important, for the context may give meaning to the symbol." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1241 (11th Cir. 2018) (internal citation and quotation marks omitted).

Courts have regarded a wide range of acts as expressive, including filming the police, *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000), siting in "whites only" areas, *Brown v. Louisiana,* 383 U.S. 131, 141–42 (1966), walking out of a meeting, *Stewart v. Baldwin County Board of Education*, 908 F.2d 1499, 1506 (11th Cir. 1990), and participating in most marches, *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 569 (1995), including one where the participants displayed swastikas, *National Socialist Party of America v. Village of Skokie*, 432 U.S. 43 (1977) (per curium).

Ordinance 70-8 prohibits similarly expressive conduct on its face and as-applied. As explained above, 70-8 would prohibit flashing lights at an officer, honking at her, and tapping on her windows. Similarly, filming a police officer would also violate the statute. By sending the signal, "I'm watching you," it could express an intent to provoke an officer to stop their lawful operations. It could express an intent to indirectly harass the officer, even under the City's narrow definition, because the person may create the video with the intention of using it to encourage others to make "persistent demands" to police departments about a wide range of policy issues. ECF 46 at 16-17. Finally, sitting or marching around officers, especially with provocative displays such as swastikas, would also violate the statute's intended (but no textual) prohibition on "mob intimidation." ECF 46 at 9, 13, 17.

### 3.      The City's arguments fail.

The City does not acknowledge these standards or controlling cases like *Skop*. Instead, it tries but fails to distinguish *Hill*.

The City attempts to distinguish *Hill* on two grounds. First, it claims that *Hill* is distinguishable because Texas law preempted a portion of that ordinance, namely the words "assaulting" and "striking," whereas Florida law does not preempt any portion of 70-8. ECF 46 at 10-11. It is unclear why this matters. 70-8 also lacks the words "assaulting" or "striking." The

procedural reasons why neither ordinance contains these words is of no moment. More importantly, in *Hill*, the Supreme Court affirmed a decision that found that "interrupt any policeman" covered "mere verbal as well as physical conduct." *Hill*, 482 U.S. at 456. That holding controls here.

Second, the City argues that *Hill* is distinguishable because, unlike the ordinance in *Hill*, 70-8 requires physical action and a location. This argument misses the point. As evidenced by the discussion of *Skop* above, 70-8 regulates pure speech. Questions about whether this speech is appropriately cabined to specific situations go to the reasonableness of the restriction, not to whether it even regulates speech. Moreover, this argument lacks merit because it misconstrues the standard for expressive conduct. Indeed, the conduct's context may make it more expressive and more worthy of First Amended protections. *Fort Lauderdale Food Not Bombs*, 901 F.3d at 1241. Walking alone in a heavily policed area may not qualify as expressive conduct but marching in that same area with a larger group of people chanting demands about changes in police policy certainly would. *Garin v. Menegazzo*, No. 21-CV-23582, 2022 WL 1658831, at *12 (S.D. Fla. May 25, 2022). *See also United States v. Grace*, 461 U.S. 171, 176 (1983) ("There is no doubt that as a general matter peaceful picketing and leafletting are expressive activities involving 'speech' protected by the First Amendment.").

The City makes two additional arguments, unrelated to *Hill*. Neither is persuasive.

The City argues that it can regulate non-inherently expressive conduct without implicating the First Amendment and states, without explanation, that the conduct regulated by 70-8 is not expressive. ECF 46 at 9. Ms. Maple agrees that laws regulating conduct do not raise First Amended concerns unless the conduct is expressive. Ms. Maple disagrees with the City's claim, however, that 70-8 does not regulate expressive conduct or pure speech. As evidenced by 70-8's text, Ms. Maple's arrest and prosecution, and by the City's characterization of the ordinance in its motion, 70-8 regulates pure speech and expressive conduct. The City's arguments about its ability to regulate non-expressive conduct intertwined with speech are irrelevant.

Second, the City argues that it can regulate speech integral to criminal conduct and that 70-8 only criminalizes "speech in furtherance of obstructing an officer's carrying out their official duties." ECF 46 at 10. As an initial matter, this argument concedes that 70-8 regulates speech. More importantly, though, the argument misunderstands the legal standard and how it

applies here. *Giboney v. Empire Storage & Ice Co.*, the case that announced the relevant standard, held that the First Amendment does not protect "speech or writing used as an integral part of *conduct* in violation of a *valid* criminal statute." 336 U.S. 490, 498 (1949) (emphasis added). This holding does not apply here: 70-8 is not a valid criminal statute, as explained below, and because a person may violate it for engaging solely in speech that the Eleventh Circuit has found protected in *Skop*. Claiming that the City may criminalize speech because it has criminalized speech is sophistry. *See also* Eugene Volokh, *The "Speech Integral to Criminal Conduct" Exception*, 101 Cornell L. Rev. 981, 987 (2016) ("[T]he *Giboney* doctrine can't justify treating speech as 'integral to illegal conduct' simply because the speech is illegal under the law that is being challenged. That should be obvious, since the whole point of modern First Amendment doctrine is to protect speech against many laws that make such speech illegal.").

> **B.    70-8 is unconstitutionally overbroad on its face and as-applied here.**

"A regulation that covers substantially more speech than the First Amendment allows is overbroad and thus invalid." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1125 (11th Cir. 2022). For a law to cover a substantial amount of protected speech, there must be "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Doe v. Valencia Coll.*, 903 F.3d 1220, 1232 (11th Cir. 2018) (internal citations and quotation marks omitted). To prove that danger, a plaintiff may refer to the law's text or to facts. *Id.*

"The first step in overbreadth analysis is to construe the challenged statute." *United States v. Williams*, 553 U.S. 285, 293 (2008). In interpreting the statute, the Court must start with the text because "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54, (1992).

In *City of Houston v. Hill*, the Supreme Court applied these principles. 482 U.S. 451, 467 (1987). In that case, a Houston ordinance made it unlawful to "molest, abuse or interrupt any policeman in the execution of his duty." *Id.* at 455. Arrested and prosecuted under the ordinance, a man challenged the ordinance as unconstitutionally overbroad under the First Amendment. *Id.* at 457-458. The Court agreed and struck down the ordinance because "[i]t is not limited to fighting words nor even to obscene or opprobrious language, but prohibits speech that 'in any manner . . . interrupt[s]' an officer." *Id.* at 462.

Here, 70-8's first clause uses nearly identical language. It makes it unlawful to "[i]nterrupt, disrupt, hinder, impede or interfere with a law enforcement officer's ability to perform such duty." Untethered to an officer's ability to perform a duty and using even broader undefined words, the second and third clauses cover more speech than the first. They make it a crime to "[p]rovoke a physical response from a law enforcement officer" or "[d]irectly or indirectly harass a law enforcement officer."

As explained above, 70-8's text attaches sanctions to a substantial amount of protected speech, including asking police officers questions, filming police officers, and engaging in protests about police conduct.

Furthermore, the Third Amended Complaint alleges that, in practice, 70-8 significantly compromises the First Amendment protections of parties not before the Court. Miami Beach officers assumed that 70-8 freed them from First Amendment restrictions and allowed them to arrest anyone who walked within 20 feet of them after a warning. Sworn testimony and actions captured on camera show this shared understanding. ECF 43 at 10, 14-15, 23-24, 26, 28-29.

Moreover, 70-8 is overbroad as-applied to Ms. Maple because officers attacked, arrested, and prosecuted her for engaging in the protected speech of filming an officer and reporting misconduct. And, during her arrest, Ms. Maple offered to censor herself, telling officers that she did not want to press charges and that she would delete the video. ECF 43 at 23-24. Because 70-8 is overbroad in all situations, including Ms. Maple's, it is unconstitutional, facially and as applied here.

### 1. The City's arguments fail.

The City argues that Ms. Maple's overbreadth challenge fails because the Court could interpret 70-8 in a more limited way. ECF 46 at 13-15. In support of this argument, it cites two cases, *Colten v. Kentucky*, 407 U.S. 104, 111 (1972) and *Wilkerson v. State*, 556 So. 2d 453, 455 (Fla. Dist. Ct. App. 1990). Neither case supports the City's position.

In *Colten*, Kentucky state courts interpreted a disorderly conduct law in a way that allowed the "exercise of any constitutional right." 407 U.S. at 108. The Supreme Court held that, in light of the state court's interpretation, the statute was not unconstitutionally overbroad because it did not regulate protected speech. This case is distinguishable because no Florida court has interpreted 70-8 at all, let alone in a more limited way.

The City's other argument also fails. In *Wilkerson v. State*, 556 So. 2d 453, 455 (Fla. Dist. Ct. App. 1990), a state court upheld the constitutionality of Florida's non-violent obstruction statute. It reasoned that the statute only had two operative orders, "obstruct" and "oppose." *Id.* It held that Florida courts should read "oppose" to mean only physical acts because, even though its definition covers both verbal and physical acts, it appears next to "obstruct," a word that only encompasses physical acts. *Id.* This holding does not apply here.

This Court, unlike the court in *Wilkerson*, is a federal court and federal courts may not "adopt a narrowing construction of a [non-federal] statute unless such a construction is reasonable and readily apparent." *Stenberg v. Carhart*, 530 U.S. 914, 944 (2000). They "will not rewrite a [non-federal] law to conform it to constitutional requirements." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988).

Interpreting 70-8 as *Wilkerson* read Florida's non-violent obstruction statute would not adopt a "reasonable or readily apparent" construction. If Miami Beach simply sought to empower its local prosecutor to enforce Florida's non-violent obstruction statute, it should have written 70-8 to mirror that law. Instead, Ordinance 70-8 differs significantly from Florida's non-violent obstruction statute in three important ways.

First, the ordinance and the statute share no common operative words or phrases. The non-violent obstruction statute does not prohibit the "intent" to do anything, let alone use the words or phrases "interrupt," "disrupt," "hinder," "impede," "interfere," "provoke a physical response," or "directly or indirectly harass." This distinction matters because the Supreme Court has held that "interrupt" is unconstitutionally overbroad, *Hill*, 482 U.S. at 465, and because most of the other operative words cover speech,[1] even when one disregards the "intent to" context.

---

[1] *American Heritage Dictionary* (5th ed. 2020), https://ahdictionary.com/word/search.html?q=disrupt (defining disrupt as "[t]o throw into confusion or disorder"); *American Heritage Dictionary* (5th ed. 2020), https://ahdictionary.com/word/search.html?q=interfere (defining interfere as "[t]o intervene or intrude in the affairs of others"); *American Heritage Dictionary* (5th ed. 2020), https://ahdictionary.com/word/search.html?q=provoke (defining provoke as "[t]o stir to action or feeling"); *American Heritage* Dictionary (5th ed. 2020), https://ahdictionary.com/word/search.html?q=harass (defining harass as "[t]o subject (another) to hostile or prejudicial remarks or actions")

Second, 70-8 uses the word "indirectly" to modify "harass." This forecloses any interpretation of harass that covers only physical conduct. The City concedes as much. ECF 46 at 15, 17.

Third, unlike the statute in *Wilkerson*, 70-8 contains three distinct subparts, all with distinct words. As a result, "[t]he substantive connection, or fit, between the terms" is "not so tight or so self-evident as to demand that [the Court] rob any one of them of its independent and ordinary significance." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 288 (2010) (internal quotation marks and citations omitted).

> **C.    70-8 discriminates based on viewpoint and content on its face and as-applied because it criminalizes some worldviews and because it cannot be justified without reference to the content of the speech.**

If a law "targets not subject matter, but particular views taken by speakers on a subject," they qualify as viewpoint discrimination. *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1126 (11th Cir. 2022) (internal quotation marks and citations omitted). Even the vilest words express viewpoints.

*R.A.V. v. City of St. Paul*, shows this. 505 U.S. 377, 379 (1992). In that case, St. Paul Minnesota passed a "Bias-Motivated Crime Ordinance." *Id.* at 380. As interpreted by the Minnesota Supreme Court, this law only prohibited a subset of fighting words that "tend[ed] to incite immediate violence" and touch "one of the specified disfavored topics." *Id.* at 380, 391. The Supreme Court struck down this law because, "The First Amendment does not permit St. Paul to impose special prohibitions on those speakers who express views on disfavored subjects." *Id*. at 391. In coming to this conclusion, the Court rejected the argument that the law simply targeted the words' effects or "injuries." *Id.* at 392–93. It reasoned, "What makes the anger, fear, sense of dishonor, etc., produced by violation of this ordinance distinct from the anger, fear, sense of dishonor, etc., produced by other fighting words is nothing other than the fact that it is caused by a distinctive idea, conveyed by a distinctive message." *Id.* at 392-393. The Court continued, "It is obvious that the symbols which will arouse 'anger, alarm or resentment in others on the basis of race, color, creed, religion or gender' are those symbols that communicate a message of hostility based on one of these characteristics." *Id.* at 393.

Here, all three subparts discriminate based on viewpoint because a phrase's permissibility turns on the speaker's viewpoint. Some words, "fighting words," express a viewpoint that

harasses someone so intensely that it provokes them to ignore their other tasks and act violently. *Chaplinsky v New Hampshire*, 315 U.S. 568, 573 (1942). 70-8 prohibits these words and words that merely "provoke a physical response," only when they express a worldview that affects police officers in this way. So, under *R.A.V.*, the ordinance impermissibly discriminates based on viewpoint. 505 U.S. at 393–94. The same argument applies to a protest that repeatedly chants, "Police, leave our streets," because these words express an intent to provoke officers to stop policing. Miami Beach Commissioners' statements that they passed 70-8 because they worried about people's respect and support for the police, ECF 43 at 9, only make it clearer that 70-8 discriminates against the viewpoints expressed in these fighting words and protest chants. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) ("The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech *because* of disagreement with the message it conveys." (emphasis added)).

Moreover, in some situations, the ordinance even criminalizes pro-police viewpoints. Ms. Maple's case illustrates this point. Ms. Maple reported her injury because of her faith in the police. When she told Officer Bercian her story and expressed her pain, she hoped that he would stop his lawful investigation of a different crime and physically assist her. ECF 43 at 15-16. She intended to "[p]rovoke a physical response from a law enforcement officer"; she sought to "interrupt, disrupt, hinder, impede or interfere with a law enforcement officer's ability to perform" one lawful duty so that he could perform another; and she sought to "harass" him with persistent demands for attention, *id.* at 15-16, 22-23. As a result, in some situations 70-8 discriminates against people who trust the police and seek their help. The discussion of *Skop* evidences the same point because Ms. Skop's actions and speech revealed her belief and expectation that officers would react reasonably to a request. Because 70-8 is viewpoint discrimination it is *per se* unconstitutional. *Speech First, Inc.*, 32 F.4th at 1126.

70-8 also discriminates on the basis of content. "A governmental regulation of speech is content-based if it applies by its terms to speech because of the topic discussed or if, even though facially neutral, it cannot be justified without reference to the content of the speech." *Id.* (internal quotation marks and citations omitted).

Here, a conviction for speech under any of 70-8's subsections cannot be justified without reference to the speech's content. Indeed, as explained above, only by analyzing the content of

the specific speech at issue can someone determine whether it expresses an intent to interrupt, disrupt, hinder, impede, interfere, provoke a physical response, or "directly or indirectly harass."

The City does not claim that 70-8 meets these standards. Instead, it spends just one paragraph on this question and makes an argument that folds in on itself. It argues, "It does not matter what is being said; the only alleged *harassment-speech* that could come within the ambit of 70-8(b)(3) is *harassment-speech* made with the intent to thwart an officer in the course of their law enforcement activities." ECF 46 at 12 (emphasis added). This argument fails, even by its own terms, because if the crime turns on whether the speech is "harassment-speech," the law discriminates based on viewpoint and content. *Cf. Speech First, Inc.*, 32 F.4th at 1126 (holding that the "discriminatory-harassment policy seems to us both a content- and a viewpoint-based speech restriction").

In other places in its motion, the City concedes that at least 70-8(b)(3) discriminates against certain viewpoints. The City argues that someone violates 70-8(b)(3) when they encourage "a third-party—say, a person that the officer is in the process of arresting—to intimidate or coerce the officer, as with persistent demands or threats." ECF 46 at 15, 17. If under this unreasonably narrow interpretation, a person, after a warning, shouts, within 20 feet of the arrest, "You can do it," their innocence will depend on whether they intended to express a viewpoint for or against the officer. Moreover, "[W]hen a government official decides that certain expressive activity will lead others to break the law, he is making a content-based distinction." *Bourgeois v. Peters*, 387 F.3d 1303, 1320 (11th Cir. 2004).

**D.      Ordinance 70-8 is not narrowly tailored to serve a legitimate government interest because the Supreme Court has already held that narrower 15-foot floating buffer zones were unconstitutional.**

If 70-8 were content neutral, "it still must be narrowly tailored to serve a significant governmental interest." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (internal citations and quotation marks omitted). "For a content-neutral time, place, or manner regulation to be narrowly tailored, it must not burden substantially more speech than is necessary to further the government's legitimate interests." *Id.*

The Supreme Court has regularly invalidated laws that create "buffer zones," including "floating buffer zones," on public sidewalks. *Schenck v. Pro-Choice Network of Western New York* concerned a fifteen-foot floating buffer. 519 U.S. 357 (1997). In that case, a law prevented

all people—"except for two sidewalk counselors, while they are tolerated by the targeted individual—from communicating a message from a normal conversational distance or handing leaflets to people entering or leaving the [abortion] clinics who [were] walking on the public sidewalks." *Id.* at 371. The Supreme Court agreed that the law ensured "public safety and order," *id.* at 376, but, nevertheless, found it an unconstitutional "both because of the type of speech that is restricted and the nature of the location." *Id.* at 377. It came to this conclusion because "[l]eafletting and commenting on matters of public concern are classic forms of speech that lie at the heart of the First Amendment, and speech in public areas is at its most protected on public sidewalks, a prototypical example of a traditional public forum." *Id.* The record showed "physically abusive conduct, harassment of the police that hampered law enforcement, and the tendency of even peaceful conversations to devolve into aggressive and sometimes violent conduct." *Id.* Yet, it concluded, "because this broad prohibition on speech 'floats,' it cannot be sustained on this record." *Id.* Moreover, it noted the practical difficulties, if not impossibilities, of trying to communicate with one person on a sidewalk at the center of a 15-foot floating buffer zone without entering another 15-foot floating buffer zone. *Id.* at 377–78.

 Ordinance 70-8 serves no legitimate interest because City Commissioners sponsored and passed 70-8 to encourage viewpoints that "respect" and "support" for police officers. ECF 43 at 9. Even if it did serve a legitimate government interest, such as safety, it would still violate the First Amendment because it "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *McCullen*, 573 U.S. at 486. A comparison of Ordinance 70-8 and the law at issue in *Schenck* proves this point.

 Ordinance 70-8 restricts more speech than *Schenck*. This ordinance creates a 20-foot floating buffer zone around nearly any full-time police officer "engaged in the lawful performance of any legal duty" in Florida, other than non-tribal and non-federal officers, regardless of where they are. ECF 43 at 8.[2] Unlike in *Schenck*, 519 U.S. at 357, or even *Cox*, 379 U.S. at 559, these buffer zones float around Miami Beach, completely untethered to any

---

[2] 70-8 defines "law enforcement officer" under 70-86. ECF 43 at 8. That section defines law enforcement officer as anyone "employed full time by the city or the state or any political subdivision thereof, who is vested with authority to bear arms and make arrests, and whose primary responsibility is the prevention and detection of crime." City of Miami Beach Code of Ordinances, Subpart A – General Ordinances, Chap. 70, Art. II, Div. 3, Sec. 70-86, available at https://library.municode.com/fl/miami_beach/codes/code_of_ordinances.

particular building, such as an abortion clinic, or any specific times, such as business hours. The only other conceivable limit, a vague warning, fails to narrow the restriction at all because, by the ordinance's text, it banishes people from the floating buffer zones forever. As a result, the 20-foot floating buffer zones, even if content neutral, are unconstitutional. 70-8 cannot survive more exacting levels of scrutiny.

> **E.     70-8 is unconstitutionally vague.**

"In our constitutional order, a vague law is no law at all." *United States v. Davis,* 139 S. Ct. 2319, 2323 (2019). A law "can be impermissibly vague" if it either (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "authorizes or even encourages arbitrary and discriminatory enforcement." *Wollschlaeger v. Governor, Florida,* 848 F.3d 1293, 1319-1320 (11th Cir. 2017) (internal citations and quotation marks omitted). Vagueness concerns are especially serious in the criminal cases, *Winters v. New York*, 333 U.S. 507, 508 (1948), and First Amendment contexts, *NAACP v. Button*, 371 U.S. 415, 432-33 (1963). The strict approach is required here because, as explained above, 70-8 regulates speech.

The first step in assessing vagueness is to construe the statutory text. *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997). If the law is vague, then "the role of courts ... is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite [the City] to try again." *United States v. Davis*, 204 L. Ed. 2d 757 (2019). The Court "cannot construe a criminal statute on the assumption that the Government will use it responsibly." *McDonnell v. United States*, 579 U.S. 550, 576 (2016) (internal citations and quotation marks omitted). Under this standard, Ordinance 70-8 is void for vagueness.

> **1.     70-8's ambiguity fails to provide ordinary people reasonable notice of what it prohibits because there have been and are multiple conflicting interpretations of it.**

Courts have found laws vague when the people, in practice, interpreted them differently: In *United States v. L. Cohen Grocery Co.*, the Supreme Court struck down a price gouging law because it found "conflicting results which have arisen from the painstaking attempts of enlightened [sic] judges in seeking to carry out the statute in cases brought before them," 255 U.S. 81, 89–90 (1921); the Eleventh Circuit struck down a federal regulation as vague because, in part, the Secretary, experts, and defense counsel all defined an operative phrase differently,

*Georgia Pac. Corp. v. Occupational Safety & Health Rev. Comm'n*, 25 F.3d 999, 1005–06 (11th Cir. 1994); and, similarly, a court in this District struck down an ordinance as vague, in part, because the enforcing officers could not agree on whether plaintiff violated it, *Sanchez v. City of S. Miami*, No. 12-24227-CIV, 2013 WL 1729373, at *5 (S.D. Fla. Apr. 22, 2013).

Here, police officers and defense counsel have all interpreted 70-8 differently. Miami Beach police officers interpret 70-8 to allow them to arrest anyone who, after a warning, comes within 20 feet of them. ECF 43 at 10, 14, 15, 23-24, ECF 51 at 30. Defense counsel disagrees. ECF 46 at 8-9.

Even when laws are not inconsistently interpreted by people enforcing them, courts have struck them down as vague when people could interpret them differently: For example, *Coates v. City of Cincinnati* invalidated a statute that criminalized "annoying" conduct because "[c]onduct that annoys some people does not annoy others." 402 U.S. 611, 614 (1971).

Ordinance 70-8 leaves open a similarly wide range of interpretations. For example, an officer may view a pedestrian playing music as evidencing an intent to harass or support them, depending on their music preferences.

### 2.   70-8 authorizes and encourages arbitrary and discriminatory enforcement because it lacks guidelines that identify the line between permissible and prohibited acts.

Courts have found that laws authorized and encouraged arbitrary and discriminatory enforcement when they covered a wide range of conduct and failed to provide guidelines that clearly distinguished between permissible and prohibited conduct. For example, *Smith v. Goguen* struck down a law that criminalized "contemptuous" flag treatment because the statute prohibited all informal flag uses without distinguishing the innocent from the criminal, 415 U.S. 566, 568–69, 574 (1974). *See also Miami For Peace, Inc. v. Miami-Dade Cnty.*, No. 07-21088-CIV, 2008 WL 3163383, at *11 (S.D. Fla. June 4, 2008) (invalidating an ordinance that included the phrase "hinder or impede" because it was "exceedingly hard to discern exactly what conduct is prohibited").

Read plainly, a wide range of conduct could violate each subpart of 70-8, as explained in the previous section's discussion of *Skop*. The City claims that at least some of this conduct would not be criminal. ECF 46 at 8-9. Yet, Ordinance 70-8 provides no guidance to the contrary.

In fact, Ordinance 70-8 does not define any criminal actus reus other than standing within 20 feet of a law enforcement officer.

These line drawing exercises are especially difficult in two additional circumstances, both present here.

First, these exercises are difficult when the challenged law contains "terms of degree." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1048–49 (1991). Here all the operative words in 70-8(b) are terms of degree because an act could slightly or intensely "harass" someone, provoke a slight or significant "physical response," or partially or completely "[i]nterrupt, disrupt, hinder, impede or interfere with a law enforcement officer's ability to perform such duty." Yet, Ordinance 70-8 provides no guidance about when an intention to engage in conduct on that sliding scale becomes criminal.

Second, these exercises are tricky when the law requires two acts for a violation but fails to explain the required relationship and temporal proximity between them. *United States v. Cardiff*, 344 U.S. 174, 176 (1952). In *Cardiff*, the Supreme Court struck down a law that made it a crime to permit the government to inspect a factory and then later revoke that permission. *Id.* The Court invalidated the ordinance because the statutory text failed to answer the following questions: "Would revocation of permission once given carry the criminal penalty no matter how long ago it was granted and no matter if it had no relation to the inspection demanded? Or must the permission granted and revoked relate to the demand for inspection on which the prosecution is based?" *Id.*

Ordinance 70-8 provokes the same question: Would approaching a police officer after a warning carry a criminal penalty regardless of when and where the previous warning occurred or what it concerned?

### 3.     Even if 70-8 is not vague in all situations, it is vague as applied to this case.

The standard for an as-applied vagueness challenge is whether the statutory terms are clear in their application to the case at bar. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 21, 130 S. Ct. 2705, 2720, 177 L. Ed. 2d 355 (2010).

Here, the ordinance's terms are not clear in their application to Ms. Maple's conduct and speech. The officers arrested Ms. Maple under 70-8 for filming the police and reporting police misconduct. ECF 43 at 20. Bercian, Stella, Campos, Feldman, and Doce imply in their answer

that they maintain this interpretation. ECF 51 at 30. Defense counsel, ECF 46 at 8-9, and the Miami Beach Mayor, ECF 43 at 29, on the other hand, disagree. As a result, if the Court concludes that 70-8 is clear in some situations, Ms. Maple's as-applied challenge should proceed because the ordinance's terms are not clear in their application to Ms. Maple's expressive conduct and speech.

### 4.     The City's arguments lack merit.

In its motion to dismiss, the City does not cite any of these cases. Instead, it makes five arguments. None passes muster.

First, the City argues that 70-8 is not vague because a "multitude of non-vague laws prohibit similar conduct." ECF 46 at 15-16 (listing cases). This argument is irrelevant. Vagueness claims challenge how, not what, laws prohibit. To the extent that the City argues that the cases listed in pages 15 and 16 show that 70-8 is not vague, this argument also fails.

Some of those cases interpreted different statutes with no overlapping operative words. *Colten v. Kentucky*, 407 U.S. 104, 108 (1972) (interpreting "public inconvenience, annoyance or alarm, or recklessly creating a risk thereof"); *Dreske v. Holt*, 536 F.2d 105, 107 (5th Cir. 1976) (interpreting "obstruct or oppose"); *Wilkerson v. State*, 556 So. 2d 453, 454 (Fla. Dist. Ct. App. 1990) (same); *Bradshaw v. State*, 286 So. 2d 4, 6 (Fla. 1973) (interpreting "corrupt the public morals," "outrage the sense of public decency," "affect the peace and quiet of persons," "brawling or fighting," "breach of the peace," and "disorderly conduct"); *State v. Beasley*, 317 So. 2d 750, 752 (Fla. 1975) (interpreting "riot" and "inciting or encouraging a riot"); *Scullock v. State*, 377 So. 2d 682, 683 (Fla. 1979) (interpreting "offering or doing violence").

The other cases interpreted similar words in meaningfully different statutory contexts. *Bouters v. State*, 659 So. 2d 235, 236 (Fla. 1995) (interpreting a statute that defined "harass"); *O.P-G. v. State*, 290 So. 3d 950, 957 (Fla. Dist. Ct. App. 2019) (interpreting a state law that prohibited the intention to "disrupt or interfere" with school functions but omitted all other operative words); *Fla. Ass'n of Pro. Lobbyists, Inc. v. Div. of Legislative Info. Servs. of the Fla. Off. of Legislative Servs.*, 525 F.3d 1073, 1075 (11th Cir. 2008) (interpreting "make, directly or indirectly," and "accept, directly or indirectly," an expenditure); *Carlson v. State*, 405 So. 2d 173, 174 (Fla. 1981) (interpreting "participate, directly or indirectly, in such enterprise through a pattern of racketeering activity"). These cases are not persuasive because "[u]ltimately, context determines meaning," *Johnson v. United States*, 559 U.S. 133, 139 (2010), and they all contain

different contexts. None prohibit the "intent" to "interrupt," "disrupt," "hinder," "impede," "interfere," "provoke a physical response," or "directly or indirectly harass."

Second, the City argues that the words "interrupt," "disrupt," "interfere," "provoke," and "harass" are not vague because Dictionary.com defines them. ECF 46 at 16-17. This argument misconstrues the proper standard. "The vagueness that dooms this statute is not the product of uncertainty about the normal meaning of [the operative words], but rather about what . . . is covered by the statute and what is not." *Gray v. Kohl*, 568 F. Supp. 2d 1378, 1388 (S.D. Fla. 2008). *See also Yates v. United States*, 574 U.S. 528, 537 (2015) ("Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words.").

Third, the City argues that "indirectly harass" is not vague because it clearly applies when someone encourages another person to "intimidate or coerce the officer, as with persistent demands or threats." ECF 46 at 17. This misses the point: A law may be void for vagueness even when it is not vague in all its applications. *Johnson v. United States*, 576 U.S. 591, 603 (2015).

Fourth, the City argues that 70-8 cannot be vague because there is a warning requirement. ECF 46 at 17. This arguments lack merit. Ordinance 70-8's warning requirement is illusory because, as evidenced by the allegations here, ECF 43 at 12-13, a violation occurs immediately after the warning. Moreover, "that the ordinance does not permit an arrest until after a dispersal order has been disobeyed does not provide any guidance to the officer deciding whether such an order should issue." *City of Chicago v. Morales*, 527 U.S. 41, 62 (1999).

Fifth, the City argues that 70-8 cannot be vague because there is a scienter requirement. ECF 46 at 17. This argument misconstrues the law, as courts have regularly struck down laws with scienter requirements. *See, e.g.*, *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 86 (1921) (finding a statute unconstitutionally vague even though it had a "willfully" requirement). Moreover, the scienter requirement here only adds to the vagueness because, as explained above, one person's intent to interrupt may look very different from another's. As the Supreme Court held in a case with a scienter requirement, it "does not clarify what conduct constitutes [a violation], whether intentional or inadvertent." *Goguen*, 415 U.S. at 580.

### F.   A municipal policy, 70-8, proximately caused Ms. Maple's injuries.

Under section 1983, a plaintiff can sue a local government when "the action that is alleged to be unconstitutional implements or executes a policy statement, *ordinance*, regulation,

or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) (emphasis added).

"A policy is a decision that is officially adopted by the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). An ordinance passed into law by a city commission is the quintessential "policy" "officially adopted by that body's officers." *Monell*, 436 U.S. at 690. A city "may therefore be sued directly if it is alleged to have caused a constitutional tort through [an] . . . ordinance officially adopted and promulgated by that body's officers." *City of St. Louis v. Propratnik*, 485 U.S. 112, 121 (1987). A policy "causes" an injury when it is the "proximate cause of the constitutional violation." *Rheuark v. Shaw*, 628 F.2d 297, 305 (5th Cir. 1980).[3] A proximate cause is "that cause which in natural and continued sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981) (internal citation and quotation marks omitted). Probable or foreseeable intervening acts, even criminal, leave the causal connection unbroken. *Id.* Under this standard, a city may be liable for "acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

With 70-8, Miami Beach has "officially sanctioned" the action of its police officers in attacking, arresting, and prosecuting people who, within 20 feet and after a warning, film the police and report misconduct. As explained in the previous sections, 70-8 is a vague and overbroad ordinance that discriminates against speech based on viewpoint and content. With the vague, broad, and discriminatory authority provided by 70-8, Sgt. Stella pepper-sprayed Ms. Maple and hit her with his bicycle. With his co-conspirators, he arrested and prosecuted her for standing near an arrest, filming the arrest, and then reporting misconduct after a warning. As explained in the preceding sections, Ordinance 70-8 caused this use of force, arrest, and prosecution because (1) it is so vague that it encourages this sort of arbitrary and discriminatory enforcement, (2) it is so broad that it criminalizes protected speech, like Ms. Maple's, and it discriminatorily punishes speech, like Ms. Maple's, with (3) viewpoints in favor of police oversight, and (4) contents about the police. Pursuant to 42 U.S.C. § 1983, Ms. Maple can challenge 70-8 and its implementation.

---

[3] *Bonner v. City of Prichard*, 661 F.2d 1206, 1211 (11th Cir. 1981).

### 1.    The City's arguments fail.

The City makes three counterarguments. None persuade.

First, the City claims that it cannot be held responsible for the officers' actions because 70-8 does not criminalize filming the police or reporting misconduct. ECF 46 at 19. As explained above, however, 70-8 *does* criminalize this expressive conduct and speech. As a result, the officers' actions were probable and foreseeable and they failed to break the causal connection between 70-8 and Ms. Maple's injuries. Moreover, because Ms. Maple challenges an ordinance, she need not allege that a policymaker directly intervened in her case or that an unwritten and widespread custom caused her injuries. *Sanchez v. City of S. Miami*, No. 12-24227-CIV, 2013 WL 1729373, at *6 (S.D. Fla. Apr. 22, 2013) (rejecting the argument that the "[t]he Complaint fails to identify any facts indicating that the City had a policy of permitting its officers to conduct unlawful detentions of those who violate its ordinances" because "Plaintiff has repeatedly argued, however, that the policy with which he takes issue is the . . . Ordinance itself.").

Second, the City asserts that it cannot be liable for the use of force because Ordinance 70-8 does not give officers authority to use force. ECF 46 at 19 n. 9. Yet, Sgt. Perez claimed that it did. ECF 43 at 23-24. Moreover, SOP #017 (April 29, 2021) authorized officers to use force to "bring an unlawful situation safely and effectively under control," *id.* at IV(B)(2)(c), and Ordinance 70-8 expanded the definition of unlawful situations to include filming the police from less than 20 feet away after a warning. The Court may consider SOP #017 (April 29, 2021) because the Third Amended Complaint references it, it is central to Ms. Maple's claim, and it is of undisputed authenticity. *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018). SOP #017 (April 29, 2021) is attached as Exhibit 1.

Finally, the City argues, counterfactually, that it cannot be liable for the officers' actions because they would have violated Ms. Maple's constitutional rights and fabricated evidence, even if 70-8 did not criminalize her actions. Ms. Maple, however, has not alleged this and "[a] court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint." *Corp. Indus. De Energia v. JPMorgan Chase Bank*, No. 22-CV-22867, 2023 WL 34643, at *2 (S.D. Fla. Jan. 4, 2023).

### G.    Ms. Maple adequately pled her claims against the City.

Ms. Maple adequately pled her claims against the City of Miami Beach. Under the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10 further provides, "If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." Fed. R. Civ. P. 10(b). Complaints run afoul of these rules when they fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015).

Here, Ms. Maple has combined her facial and as-applied challenges under the First and Fourteenth Amendment into two separate counts. The City has not claimed that Third Amended Complaint fails to provide adequate notice of Ms. Maple's claims or that separating them would promote clarity. Instead, it makes a purely formalistic argument and asserts that the Court should dismiss Ms. Maple's complaint because her facial and as-applied challenges are distinct legal theories. ECF 46 at 7. The standard, however, is "adequate notice," *Weiland*, 792 F.3d at 1323, and the "promot[ion] of clarity," Fed. R. Civ. P. 10(b). Because the City has not identified this standard, let alone met it, the Court should deny this basis for dismissal. In the alternative, if the Court agrees with the City on this point, Ms. Maple requests leave to amend the Third Amended Complaint to correct the alleged error.

## CONCLUSION

For the reasons contained herein, this Court should deny the City's motion to dismiss. Should the Court grant the City's motion, however, Ms. Maple respectively requests an opportunity to amend her Third Amended Complaint.

Date: January 10, 2023,                    Respectfully submitted,

Sam Thypin-Bermeo, Esq.
Florida Bar No. 1019777
Thypin Bermeo PLLC
25 S.E. 2nd Ave., Suite 1105, Miami, FL 33131
Telephone: (786) 665-8827
Sam@ThypinBermeo.com
Chad Piotrowski
Florida Bar No. 33507
Law Offices of Chad Piotrowski, P.A.
169 E. Flagler St., Suite 1600, Miami, FL 33131
Telephone: (305) 204-5000
chad@cplaw-miami.com
*Attorneys for Mariyah Maple*