**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO.: 21-23960-CIV-BB**

MARIYAH MAPLE,

       Plaintiff,

vs.

CITY OF MIAMI BEACH, et al.,

       Defendants.

_____/

**DEFENDANT CITY OF MIAMI BEACH'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS COUNTS 10 AND 11 OF
PLAINTIFF'S THIRD AMENDED COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff's[1] Opposition [ECF No. 52] ("Opp.") is heavy on hypotheticals but light on real-world application of 70-8. The City is entitled to deference in interpreting its own ordinance, and Plaintiff cannot concoct scenarios to fabricate unconstitutionality. 70-8 is neither overbroad nor vague. And though 70-8 is a "policy," it didn't proximately cause her injuries; the officers did.

## I. THE CITY'S INTERPRETATION OF 70-8 IS ENTITLED TO DEFERENCE

In keeping with the rule that a First Amendment challenge to a legislative measure fails "if the measure is readily subject to a limiting construction that would remove the threat of deterrence to constitutionally protected expression," *Grand Faloon Tavern, Inc. v. Wicker*, 670 F.2d 943, 946 (11th Cir. 1982), the City offered such a limiting construction: 70-8 is not violated if a person's predominant intent is to exercise her free speech rights, rather than to thwart an officer's ability to lawfully carry out a legal duty. *See* Mot. at 12–13 (citing *Colten v. Kentucky*, 407 U.S. 104, 108–11 (1972)). The City also offered a construction in harmony with Florida case-law interpreting the analogous resisting without-violence statute (Fla. Stat. § 843.02): 70-8 is violated only if a person, after receiving a warning, approaches or remains within 20 feet of an officer discharging their legal duties, so long as that person intends to ***physically oppose or resist*** the officer or encourage others to do so. *Id.* at 13–14 (citing *Wilkerson v. State*, 556 So. 2d 453, 455–56 (Fla. 1st DCA 1990)).

Plaintiff does not accept the City's limiting construction. She calls it "exceedingly narrow." Opp. at 3; *see also id.* at 11. But that's exactly the point: in the face of an overbreadth challenge, the Court should endeavor to read the ordinance as narrowly as logically permissible. *See, e.g.*, *Am. Booksellers v. Webb*, 919 F.2d 1493, 1500 (11th Cir. 1990) (noting that "courts have an obligation to construe the challenged statute narrowly"). The City's permissible interpretation of its own ordinance is entitled to deference. *Southlake Prop. Assocs., Ltd. v. City of Morrow, Ga.*, 112 F.3d 1114, 1119 (11th Cir. 1997). This should end the facial inquiry on Count 10.

Plaintiff seems to suggest that the City cannot propose its limiting construction because "no Florida court has interpreted 70-8 at all, let alone in a more limited way." Opp. at 7. That suggestion is illogical; there will always be a first time that a law is challenged, and the absence of case precedent doesn't prevent the City from offering its own construction of its own ordinance.

## II. *SKOP V. CITY OF ATLANTA* IS DISTINGUISHABLE

Plaintiff contends *Skop v. City of Atlanta,* 485 F.3d 1130 (11th Cir. 2007), is "controlling"

---

[1] All capitalized terms have the meaning as in the City's Motion [ECF No. 46] ("Mot.").

of the First Amendment constitutional analysis here. Opp. at 2–4. Not so. *Skop* did not involve any constitutional challenge to a city ordinance. Ms. Skop did not even assert any First or Fourteenth Amendment violation under 42 U.S.C. § 1983. Rather, *Skop* was a qualified immunity case based on an individual officer's alleged false arrest and malicious prosecution in violation of the Fourth Amendment. *Id.* at 1136. In fact, the Eleventh Circuit in *Skop* affirmed the entry of summary judgment for the City on the plaintiff's *Monell* claim because the evidence proved that the rogue officer acted in contravention of city policy. *Id.* at 1145. That's all Plaintiff alleges here.

Plaintiff theorizes that the facts of *Skop* would amount to a violation of 70-8. Opp. at 2–3. That theory is Plaintiff's alone, not the City's. The City disagrees that Ms. Skop's conduct would violate 70-8. Nothing in the text of 70-8 criminalizes a resident's "persistent demands"[2] for attention (Opp. at 3) to request that an officer move his car up a foot so that she could access her driveway. *See Skop*, 485 at 1133–34. The officer in *Skop* "[did] not claim that [Ms. Skop] ever threatened him or even raised her voice." *Id.* at 1134. The Court agreed that Ms. Skop "[d]id not even engage in speech that amounts to 'criticism and challenge,' but simply reiterat[ed] or attempt[ed] to clarify a perfectly reasonable question directed to the officer…." *Id.* at 1139. Such reasonable questioning fails to satisfy 70-8(b)'s elements of ***approaching or remaining*** within 20 feet, after a warning, of an officer engaged in his legal duties ***with the intent to*** hinder the officer's ability to perform such duty, provoke a physical response from the officer, or harass the officer. *See* City Code § 70-8. Plaintiff posits that Ms. Skop had the requisite intent, "although briefly," to interrupt, disrupt, hinder, impede or interfere with the officer's ability to perform his lawful duty (Opp. at 3), but nothing in the *Skop* opinion supports such intent—and Plaintiff's position is at odds with the City's permissible limiting construction of 70-8.

### III. 70-8 REGULATES CONDUCT, OR AT MOST, NON-PROTECTED SPEECH

As explained on pages 7 through 11 of the City's Motion, the First Amendment protects pure speech but not conduct or speech that is integral to criminal conduct. Plaintiff agrees. *See*

---

[2] Plaintiff's use of quotes here is another example of her cherry-picking isolated words instead of reading the language holistically. The City relies in its Motion (and in officer training) on a definition of "harass" that reads: "to intimidate or coerce, as with persistent demands or threats." Mot. at 15; Compl. ¶ 140. Obviously, the phrase "persistent demands" must be read in conjunction with the phrase it modifies—"to intimidate or coerce"—rather than being contorted to encompass a resident's reasonable follow-up request that an officer temporarily pause his paperwork to move the police vehicle that is blocking the resident's driveway.

Opp. at 2, 5–6. The parties simply disagree about whether 70-8 regulates conduct or speech.[3]

Plaintiff claims 70-8 regulates "pure speech" because an expression of "verbal criticism and challenge directed at police officers" would be unlawful under the ordinance. Opp. at 2. Again, Plaintiff misreads 70-8. Verbal criticism, without more, does *not* violate 70-8. Indeed, a person standing 21 feet away from an officer, shouting threats, could *never* be in violation of 70-8. Plaintiff cannot ignore the prefatory language of 70-8(b), which identifies the core of what is outlawed: "It shall be unlawful for any person, after receiving a warning from a law enforcement officer, to *approach or remain* within 20 feet of a law enforcement officer engaged in the lawful performance of any legal duty *with the intent to*" engage in any of the three sub-prongs.

Plaintiff alternatively contends that 70-8 criminalizes expressive conduct, which is equivalent to protected written or oral speech. *See* Opp. at 4; *Ft. Lauderdale Food Not Bombs v. City of Ft. Lauderdale*, 901 F.3d 1235, 1240 (11th Cir. 2018). But conduct intended to foil an officer conducting an arrest (for example) is no more "expressive" than a person deciding "to express his disapproval of the Internal Revenue Service by refusing to pay his income taxes," *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006); the desire to engage in such "expression" doesn't subject the Tax Code to First Amendment scrutiny, *see id*.

Plaintiff suggests "flashing lights at an officer, honking at her, and tapping her windows" would be expressive conduct that violates 70-8. Opp. at 4. This suggestion ignores the import of context. If "flashing lights at an officer" means intentionally shining a bright light in an officer's eyes while standing only two feet away from them,[4] after receiving a warning, and with the intent to make it harder for the officer to effect their arrest, then yes, that may violate 70-8. But that conduct is intended to obstruct justice rather than to convey some "message," so it does not qualify as protected conduct. *Cf. Virginia v. Black*, 538 U.S. 343 (2003) (concluding that "a State, consistent with the First Amendment, may ban cross burning carried out with the intent to intimidate"; even though "cross burning is symbolic expression," it is not protected conduct if intended to convey a threat). Moreover, the same conduct from 21 feet away is not covered by 70-8. So, the ordinance leaves sufficient avenues available for expression of anti-police sentiments.

---

[3] Plaintiff's theory that "Ms. Maple's arrest and prosecution" itself evidences that "70-8 regulates pure speech and expressive conduct" must be rejected. The City denies that the circumstances of Plaintiff's arrest (if her allegations about those circumstances are true, as we must now assume) arose from a valid violation of 70-8. *See* Mot. at 18.

[4] As in the Motion, the City uses the pronouns they/their/them to refer to a person of any gender.

*Cf. Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 294–96 (1984) (ban on sleeping in symbolic "tent cities" to show struggles of unhoused persons was constitutional, even if "sleeping, arguendo, may be expressive conduct," because there was no "barrier to delivering to the media, or to the public by other means, the intended message concerning the plight of the homeless").

Plaintiff next claims "filming a police officer would also violate the [ordinance]." Opp. at 4. The City has already repeatedly explained that filming an officer, alone, does ***not*** violate 70-8. *See* Mot. at 4, 7, 11 & n.5, 19. Anyway, the right to film police is "subject to reasonable time, manner and place restrictions," *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000).

Finally, Plaintiff submits that "sitting or marching around officers, especially with provocative displays such as swastikas, would also violate" 70-8.  Opp. at 4. Here, too, context matters. Sitting peacefully or marching at a distance of greater than 20 feet would not violate 70-8, regardless of how inflammatory the sitters' or marchers' symbolic or verbal displays may be. It is ***only*** once those persons ***approach or remain*** within 20 feet after receiving a warning from an officer, and ***only*** if those persons possess the proscribed ***obstructive intent***, that the ordinance could plausibly be triggered. *Cf. Black*, 538 U.S. at 352–67 (while cross-burning, generally, could be protected conduct, it is not protected if done with threatening intent; "contextual factors" must be considered to determine intent to intimidate).

## IV.    BY DISTINGUISHING *HILL*, THE CITY EXPLAINED WHY 70-8 REGULATES CONDUCT

In its Motion, the City preemptively explained why *Hill* does not control the outcome of this facial challenge. Mot. at 9–11. Plaintiff argues otherwise, Opp. at 4–6, but to no avail.

First, Plaintiff finds it "unclear why [it] matters" that the Houston ordinance in *Hill* was partially preempted by state law. Opp. at 4. The reason why it matters is that Plaintiff raised the specter of preemption in her Complaint. *See* Compl. ¶¶ 265.d, 269.b. Plaintiff does not dispute that the City can enact municipal law that is co-extensive with state law. *See* Mot. at 9–10.

Second, Plaintiff dismisses the City's explanation that 70-8 "requires physical action and a location" by simply saying, without elaborating: "This argument misses the point." Opp. at 5. It doesn't. The very point is that by regulating specific physical action—the act of approaching or remaining in the 20-foot radius of an officer engaged in lawful duties, failing to "Respect [Their] Space" (as the ordinance is colloquially called, Mot. at 7)—the focus of 70-8 is ***conduct***, whereas the *Hill* ordinance that made it unlawful to "***in any manner*** oppose, molest, abuse or interrupt" an officer, 482 U.S. at 455 (emphasis added), captured pure speech ***without any conduct-based***

*conditions*. Plaintiff's redirection to *Skop* (Opp. at 4, 6) is circular and unhelpful, as explained above. And Plaintiff's citation to this Court's decision in *Garin v. Menegazzo*, No. 21-CV-23582, 2022 WL 1658831, at *12 (S.D. Fla. May 25, 2022), doesn't belong in this discussion because, there, this Court considered the retaliatory arrest claim against an officer; the Court **assumed** for probable-cause purposes that the city noise ordinances were "grossly and flagrantly unconstitutional" but did not decide as much.[5] This Court did not analyze the merits of any overbreadth challenge and did not decide whether the city was regulating expression or conduct.

Simply put, in attempting to analogize *Hill*, Plaintiff ignores essential language of 70-8. Plaintiff argues that "70-8's first clause uses nearly identical language" to the ordinance in *Hill* (Opp. at 7)—but the portion of 70-8 that Plaintiff quotes **is not 70-8's first clause**. The actual first clause is the introductory clause that controls over all of the sub-prongs: "It shall be unlawful for any person, after receiving a warning from a law enforcement officer, to approach or remain within 20 feet of a law enforcement officer engaged in the lawful performance of any legal duty with the intent to…." City Code § 70-8(b). This is a critical distinction. *See also Andrade v. Marceno*, No. 2:19-cv-887-JES-MRM, 2023 WL 157087, at *6 (M.D. Fla. Jan. 11, 2023) (recognizing police may order citizens to leave arrest scene, citing *Corbitt v. Vickers*, 929 F.3d 1304 (11th Cir. 2019)).

Plaintiff is wrong to read *Hill* as saying that the word "interrupt" is *per se* constitutionally overbroad regardless of context (Opp. at 8); "interrupt" was declared unconstitutional insofar as the challenged ordinance criminalized interruption "in any manner"—unaccompanied by physical conditions—because that encompassed purely verbal interruption. *Hill*, 482 U.S. at 461. *Hill* made clear that interruptive conduct, including the choice to intentionally distract an officer who is in the middle of directing traffic at a busy intersection, **could** "constitutionally be punished under a properly tailored statute." *Id.* at 462 n.11 (citing *Colten v. Kentucky*, 407 U.S. 104 (1972)). "What a municipality may not do, however, and what Houston has done in this case, is to attempt to punish such conduct by broadly criminalizing speech directed to an officer—in this case, by authorizing the police to arrest a person who in **any** manner verbally interrupts an officer." *Id.*

Plaintiff again claims "70-8's text attaches sanctions to a substantial amount of protected speech, including asking police questions, filming police officers, and engaging in protests about police conduct." Opp. at 7. This is false. Good-faith questioning, protesting, and filming are not

---

[5] The Court even commented that the officer could have argued that the noise ordinances are constitutional as a matter of law, but he failed to raise such arguments in his motion. *Id.* at *10 n.4.

sanctionable under 70-8. ***Intentionally*** interfering with, provoking a physical response from, and harassing an officer engaged in the lawful performance of a legal duty may be sanctionable, but only in a certain area (within 20 feet) after a warning is given. Because such conduct (or speech that is integral to criminal conduct regardless of 70-8, in that it may also violate Florida Statutes §§ 843.02, 784.08, etc.) is not protected by the First Amendment, the facial challenge fails.

## V.   EVEN IF 70-8 REGULATES SPEECH, IT IS NOT OVERBROAD

Plaintiff's first overbreadth argument is the City's proposed narrowing construction to align with *Wilkerson* and Florida's non-violent obstruction statute is supposedly unreasonable: "If Miami Beach simply sought to empower its local prosecutor to enforce Florida's non-violent obstruction statute, it should have written 70-8 to mirror that law." Opp. at 8. This argument must be rejected as set forth above and in the Motion. The City may legislate to fill state-law gaps. The state non-violent obstruction statute criminalizes conduct, and 70-8 criminalizes ***approaching or remaining*** within 20 feet of an officer, after a warning, with the intent to commit such conduct. The two laws can be read harmoniously, as the City reads them, even if the language isn't identical.

Next, Plaintiff contends use of the word "indirectly" to modify "harass" "forecloses any interpretation of harass that covers only physical conduct." Opp. at 9. But the Eleventh Circuit recently held that suicide—an inherently physical act—can be committed "indirectly." *N. Am. Co. for Life & Health Ins. v. Cladwell*, 55 F.4th 867, 871 (11th Cir. 2022). The modifier "indirectly" does not preclude a finding that the object, "harass," requires physicality.

Plaintiff then argues that the three sub-prongs of 70-8(b) are too distinct to evince a substantive connection. Opp. at 9. But the sub-prongs are sufficiently similar. They share a common purpose: an officer should be afforded enough physical space to carry out their duties, without being intentionally provoked, obstructed, or interfered with, including being free from harassment that extends beyond any purely verbal interruption. The City need not articulate each and every form that prohibited "harassment" might take.

Further, Plaintiff characterizes 70-8 as "criminaliz[ing] some worldviews," Opp. at 9–11, but it does no such thing. The culpability of Plaintiff's hypothetical bystander yelling "You can do it" within 20 feet of an arrest, Opp. at 11, does not depend on whether the bystander supports or opposes police, generally. It requires consideration of context for the bystander's intent, just like the cross-burning in *Black*. Is the arrestee trying to stab the officer, and is the bystander encouraging the stabbing? If so, "You can do it" is the functional equivalent of "fighting words,"

beyond the First Amendment's scope. *See Hill*, 482 U.S. at 463 n.12 ("The freedom verbally to challenge police action is not without limits, of course; we have recognized that 'fighting words' which 'by their very utterance inflict injury or tend to incite an immediate breach of the peace' are not constitutionally protected."). That isn't "worldview" discrimination.

Plaintiff also concocts a scenario where protesters are arrested under 70-8 for chanting "Police, leave our streets," because in Plaintiff's view, "these words express an intent to provoke officers to stop policing." Opp. at 10. Creative as this scenario may be, the City has never applied 70-8 in that way. And "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984).

Nothing on the face of 70-8 impermissibly targets messages based on viewpoint. The ordinance in *R.A.V. v. City of St. Paul*, 505 U.S. 377, 380 (1992) (Opp. at 9–10) did: it criminalized cross-burning for the purpose of upsetting people "on the basis of race, color, creed, religion or gender." By contrast, in *Black*, Virginia's generally-applicable prohibition on cross-burning-with-intent-to-intimidate-***anyone***, for any reason, was upheld; the Supreme Court determined the St. Paul ordinance in *R.A.V.* was distinguishable. 538 U.S. at 360–63. At the risk of sounding like a broken record here, context matters. Anyone could be the target of intimidating cross-burning.[6] But only police officers can be the target of conduct intended to obstruct the administration of justice, which is what 70-8 is all about. Despite the language of *R.A.V.*, the Court has recognized that there are often good reasons "to ban only a particular type of threat" against a certain person or class of people, such as threats against the President. *Black*, 538 U.S. at 362. The First Amendment permits a law to draw distinctions that are "based on the very reasons why the particular class of speech at issue … is proscribable," *id.* (quoting *R.A.V.*, 538 at 393)—as here.

## VI.  THE "BUFFER ZONE" CASES ARE INAPPLICABLE TO POLICE INTERFERENCE

Plaintiff compares 70-8 to laws creating "buffer zones" around health-care facilities that provide abortions. Opp. at 11–13 (citing *McCullen v. Coakley*, 573 U.S. 464 (2014) and *Schenck v. Pro-Choice Network of Western N.Y.*, 519 U.S. 357 (1997)). True, such "buffer zones" have been invalidated, but the rationale is inapplicable here.

*Schenck* involved a court-imposed injunction (not a legislative enactment) that banned

---

[6] For example, the Court faulted the St. Paul ordinance for failing to include "homosexuality" as a basis upon which the cross-burning "fighting words" would be prohibited. *R.A.V.*, 505 U.S. at 391.

"demonstrating … within fifteen feet of any person or vehicle seeking access to or leaving such facilities." 519 U.S. at 366–67 & n.3. Thus, the proscribed conduct was mere "demonstration," and that was problematic: "Leafletting and commenting on matters of public concern are classic forms of speech that lie at the heart of the First Amendment, and speech in public areas is at its most protected on public sidewalks, a prototypical example of a traditional public forum." *Id.* at 377. That's the first important difference from 70-8: 70-8 does not criminalize "leafletting" or "commenting on matters of public concern"; it prohibits approaching or remaining within 20 feet of an officer, after a warning, with the intent to inhibit the officer discharging a legal duty.

And *Schenck* recognized that, inherently, there was only limited time and space for anti-abortion protesters to peaceably deliver their message to an incoming or outgoing patient or clinic employee. *See id.* at 377–78. By contrast, even if 70-8 applied to protesters who wanted to chant "Police, get of our streets" (and the City does not so concede, because the requisite intent would be lacking), those protesters have plenty of options to peaceably deliver that message (e.g., do so 21 feet away from an officer, or wait until the officer is not in the middle of discharging their legal duty) without violating the ordinance.

70-8 may be like a "floating buffer zone" in that officers move around "untethered to any particular building," Opp. at 12–13, but it does not "banish[] people from the floating buffer zones forever"—it only bans people with certain intent, taking certain action at certain times. Distance-based restrictions are not *per se* impermissible. *Schenck*, 519 U.S. at 377 (declining to categorically reject a law with "some sort of zone of separation…, measured by the distance between the two"). 70-8 is limited in time, place and manner. The totality of the circumstances, including the strong government interest in public safety and order, justifies the narrow "Respect My Space" law here.

## VII.   70-8 IS NOT UNCONSTITUTIONALLY VAGUE

The Supreme Court has recognized that in "most English words and phrases there lurk uncertainties." *Rose v. Locke*, 423 U.S. 48, 50 (1975). "Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid." *Id.* But the Due Process Clause does not require a reviewing court to invalidate every law that could possibly be more precise. *Id.* at 49–50.

Plaintiff has not identified any true vagueness in 70-8. She says the law must be vague because a handful of officers interpreted it differently than the City's attorneys do. Opp. at 13–14. But that's not the test for facial vagueness. Plaintiff cites a case where the Secretary charged with

administering an OSHA regulation about forklift loads that "obstruct[] forward view" offered inconsistent definitions of that phrase through her experts, her counsel, and herself. *Ga. Pac. Corp. v. Occupational Safety & Health Rev. Comm'n*, 25 F.3d 999, 1005 (11th Cir. 1994). The Eleventh Circuit declared: "The Secretary, as enforcer of the Act, retains the responsibility to state with certainty what is meant by the standards she has promulgated. … We find here, that where the Secretary is unable to settle upon a single definition of a critical term or phrase of its own regulation, that the regulation is unconstitutionally vague as applied …." *Id.* Expressly, this is an as-applied ruling. Here, there can be no as-applied finding of vagueness based on a few officers' misreading of 70-8; that would violate *Monell*. *See* Section VIII, *infra*. City policymakers have ***not*** offered varying definitions of 70-8, so *Georgia Pacific* is inapposite.

Plaintiff also claims the court in *Sanchez v. City of South Miami* "struck down an ordinance as vague, in part, because the enforcing officers could not agree on whether the plaintiff violated it[.]" Opp. at 14. That's not what happened. In *Sanchez*, the plaintiff challenged a noise ordinance that prohibited "any loud or boisterous noise which may annoy persons," No. 12-24227-CIV, 2013 WL 1729373, at *5–6 (S.D. Fla. Apr. 22, 2013). While the plaintiff did allege he was given "conflicting statements" from two officers regarding whether he violated the law, the court denied the city's motion to dismiss because "may annoy" is tantamount to no standard at all. *Id.* 70-8 does not use the term "may annoy." Instead, 70-8 focuses on the perpetrator's intent. Thus, if a person approaching or remaining near an officer objectively doesn't mean to interfere, provoke, or harass them, then they haven't violated 70-8; to violate 70-8, one must intend the result and therefore knows what the law forbids. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 502 (1982) (drug paraphernalia marketing regulation was not vague, as it "requires scienter, since a retailer could scarcely 'market' items 'for' a particular use without intending that use").

Vagueness should not be assessed by reading single words or phrases in isolation. The *Miami for Peace* case cited by Plaintiff (Opp. at 14) invalidated a loitering ordinance that made it a crime to "hinder or impede the passage of pedestrians or vehicles," but that's because it contained no other "restrictive standards which would limit its application to impediments to passage that threaten public safety or a breach of the peace." 2008 WL 3163383, at *11 (S.D. Fla. June 4, 2008) (quoting *Ciccarelli v. City of Key W.*, 321 So. 2d 472, 474 (Fla. 3d DCA 1975)). 70-8 contains restrictive standards because it only applies in close range, mid-duty, when public safety is at risk.

Plaintiff's "line drawing exercises" (Opp. at 15) gain no ground. A 70-8 warning naturally

must be temporally proximate to the act of "approach[ing] or remain[ing]" near the officer. The law isn't vague for want of a mathematically-certain time period between the warning and crime. And the fear of a person being arrested for intending to only "slightly harass" an officer is absurd.

## VIII.   PLAINTIFF'S AS-APPLIED CHALLENGES FAIL

Plaintiff's as-applied theory presumes that, by arresting Plaintiff only for "filming the police and reporting police misconduct," the police officers correctly interpreted 70-8 and therefore applied 70-8 to Plaintiff in a way the City intended for the law to be applied. Opp. at 15–16; *see also id.* at 7, 10, 17–19. But the City, as a *sui juris* entity separate from the officers, ***denies*** that the officers correctly read 70-8 and ***denies*** that 70-8 covers the conduct Plaintiff allegedly engaged in. *See generally* Mot.; Compl. ¶¶ 136–140. Plaintiff admits as much. Opp. at 16, 19.

Nevertheless, Plaintiff baselessly contends: "With 70-8, Miami Beach has 'officially sanctioned' the action of its police officers in attacking, arresting, and prosecuting people who, within 20 feet and after a warning, film the police and report misconduct." Opp. at 18. Same with the Opposition's new theory that SOP #017 is a policy that, when read in conjunction with 70-8, "officially sanctioned" Sgt. Stella's pepper-spraying Plaintiff. Opp. at 19 & Ex. 1. Plaintiff's logic is contrary to *Monell*. It's like saying that, if a person taps a City officer on the shoulder and the officer falsely manufactures a battery charge, *see* City Code § 70-1(c), then the City can be liable because the battery statute is unconstitutional as it was applied to that person. That's functionally no different from *respondeat superior* liability, which *Monell* forbids. 436 U.S. 658, 691 (1978).

Plaintiff fails to address the City's cited case of *Brown v. City of Pittsburgh*, 586 F.3d 263 (3d Cir. 2009). *See* Mot. at 17–18. *Brown* squarely stands for the proposition that when an ordinance is facially valid, the ordinance itself cannot be the "policy" to support a *Monell* claim based on officers' unlawful application of that ordinance. 586 F.3d at 292–94. Rather, the plaintiff would need to demonstrate a pattern of past unlawful enforcement. *Id.*; *see also Dankanich v. Pratt*, No. 21-1008, 2021 WL 5832281, at *3 (3d Cir. Dec. 9, 2021) (single unlawful interpretation of confidentiality provision in city's false claims ordinance did not give rise to *Monell* liability: "An interpretation [of the ordinance] in one instance does not amount to a policy or custom.").

Here, Plaintiff has alleged no such pattern, nor can she. She admits that once the City learned how certain officers were abusing 70-8, it suspended enforcement pending further training. Compl. ¶¶ 137–40. Thus, the "official policy" itself, 70-8, did not cause Plaintiff's injury; the officers' rogue, unsanctioned, and isolated actions (taking the Complaint's allegations as true) did.

RAFAEL A. PAZ, CITY ATTORNEY
CITY OF MIAMI BEACH
1700 CONVENTION CENTER DRIVE
4TH FLOOR-LEGAL DEPARTMENT
MIAMI BEACH, FLORIDA 33139
TEL: (305) 673-7470
FAX: (305) 673-7002

By: /s/*Henry J. Hunnefeld*
HENRY J. HUNNEFELD
First Assistant City Attorney
henryhunnefeld@miamibeachfl.gov
Florida Bar No. 343811
By: /s/*Freddi Mack*
FREDDI MACK
Senior Assistant City Attorney
freddimack@miamibeachfl.gov
Florida Bar No. 111623

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of January, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which in turn will automatically generate a Notice of Electronic Filing to all parties in the case who are registered users of the CM/ECF system.

/s/*Freddi Mack*

-11-