UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-23960-BLOOM/Otazo-Reyes

MARIYAH MAPLE,

    Plaintiff,

v.

CITY OF MIAMI BEACH,
*et al.*,

    Defendants.
_____/

**ORDER ON MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon Defendant City of Miami Beach's ("City") Motion to Dismiss Counts 10 and 11 of Plaintiff Mariyah Maple's ("Maple") Third Amended Complaint ("TAC"), ECF No. [46] ("Motion"). Maple filed a Response in Opposition, ECF No. [52], to which the City filed a Reply, ECF No. [57]. The Court also received Notices of supplemental authority, *see* ECF Nos. [60], [62], and responses thereto, *see* ECF Nos. [65], [66]. On February 10, 2023, the Court held a Hearing on the Motion. The Court has carefully considered the Motion, all supporting and opposing submissions, the parties' arguments at the Hearing, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

I.     **INTRODUCTION**

Maple brings this action under 42 U.S.C. § 1983 for alleged deprivations of Maple's constitutional rights. *See generally* ECF No. [43]. The TAC alleges the following facts:

On June 23, 2021, the City of Miami Beach Commissioners passed Miami Beach Ordinance 70-8 (the "Ordinance"). *Id.* ¶ 40. The Ordinance states in relevant part:

> (b) It shall be unlawful for any person, after receiving a warning from a law enforcement officer, to approach or remain within 20 feet of a law enforcement officer engaged in the lawful performance of any legal duty with the intent to:
>
> > (1) Interrupt, disrupt, hinder, impede or interfere with a law enforcement officer's ability to perform such duty; or
> >
> > (2) Provoke a physical response from a law enforcement officer; or
> >
> > (3) Directly or indirectly harass a law enforcement officer.

*Id.* ¶ 34 (reformatted).

Maple alleges that "a practice immediately evolved after the ordinance's enactment: If a person appeared to be closer than 20 feet to an on-duty officer, the officer would command the person to move away and, if the person refused, the officer would arrest them, regardless of their intentions or protected speech." *Id.* ¶ 42.

On July 25, 2021, Maple was walking on Collins Avenue when she encountered a group of three officers arresting a teenager, while two other officers, Defendants Sgt. Stella and Sgt. Perez, stood nearby. *Id.* ¶¶ 44, 49. Defendants Major Doce, Cpt. Feldman, Lt. Diaz, Officer Rueda, and Officer Acevedo "watched the entire interaction, standing on the same block and on the same side of the street" as Maple. *Id.* ¶ 49. Defendants Officer Bercian and Officer Campos "stood half a block away" and could see Maple. *Id.*

Maple began to record the teenager's arrest with her cellphone. *Id.* ¶ 51. A light on the back of her phone turned on, indicating to the Defendant police officers that Maple was filming. *Id.* ¶¶ 51-52. About thirty seconds later, Sgt. Stella approached Maple on the sidewalk, lifted his bicycle, told her to back up, and "[b]efore Ms. Maple had a chance to move, he slammed the bicycle into Ms. Maple's right arm and knee." *Id.* ¶ 53. Maple took a step backward, but "[w]ithin seconds, Sgt. Stella sprayed Ms. Maple directly in the eyes from less than 2 feet away with Sabre Red, an Aerosol Deterrent Spray." *Id.* ¶¶ 54-55. The spray caused Maple to suffer burning eyes,

blurred vision, and throat and stomach pain. *Id.* ¶ 57. Maple then returned to her mother's car. *Id.* ¶ 61.

Maple's mother complained to Officer Bercian, who then called Sgt. Stella. *Id.* ¶ 73. "The individual Defendants came to an understanding that, to dissuade Ms. Maple from filing a federal civil rights complaint against Sgt. Stella, they would falsely arrest her, maliciously prosecute her, and try their best to cover it up. . . . So, they decided to arrest her and charge her under the . . . Ordinance[.]" *Id.* ¶ 77.

At least five police officers, including Officers Bercian, Rueda, and Acevedo, approached Maple in her mother's car, asked her to step outside, and told her she was under arrest for violating a city ordinance. *Id.* ¶ 88-96. Officer Acevedo eventually took Maple to receive medical care at a hospital, and then drove her to Miami Dade County's jail. *Id.* ¶ 121-23. Maple was released a few hours later after her family paid a $500.00 bond *Id.* ¶ 126-27. After the arrest, "Officer Bercian and Sgt. Perez wrote and signed an arrest affidavit in consultation with Sgt. Stella," which accused Maple of violating the Ordinance. *Id.* ¶ 142, 144. On July 25, 2021, Officer Bercian and Sgt. Perez filed the affidavit, initiating Maple's prosecution. *Id.* ¶ 145. "[O]n September 2, 2021, the City of Miami Beach's City Attorney decided against prosecuting Ms. Maple for violating 70-8 and her case ended in a nolle prosequi disposition." *Id.* ¶ 151.

Within a few weeks of the arrest, the City temporarily suspended enforcement of the Ordinance, "pending additional training." *Id*. ¶ 139. The Miami Beach Police Department ("Department") provided that training within the next week, instructing officers that "[i]n most cases, officers do not have the legal authority or constitutional right to stop a person from recording them in public[.]" *Id* ¶ 140. The Department also defined several terms within the Ordinance,

including "impede," "provoke," and "harass." *Id.* The Ordinance was reinstated on or before November 9, 2021. *Id.* ¶ 152.

The TAC alleges nine counts against the Defendant Officers involved in the foregoing events, and two counts against the City. *See generally id*. Relevant here, Count 10 seeks to hold the City liable under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978), for instituting an official policy – the Ordinance – which violated Maple's First Amendment rights. *Id*. at 61-63. Count 11 asserts a similar *Monell* claim against the City for violating Maple's rights arising under the Due Process Clause of the Fourteenth Amendment. *Id*. at 63-65. Both counts allege that the Ordinance is unconstitutional on its face and as applied to Maple. *Id*. ¶¶ 265, 269

The City now moves to dismiss Counts 10 and 11 of the Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that (1) the facial and as-applied challenges are improperly commingled; (2) the Ordinance is facially valid under the First and Fourteenth Amendments; and (3) Maple's as-applied challenges to the Ordinance are improper because she failed to allege that the violations of her constitutional rights were caused by official policies or customs approved by a final policymaker. *See generally* ECF No. [46]. Maple responds that the Ordinance (1) is unconstitutionally overbroad on its face and as applied because it criminalizes pure speech and expressive conduct; (2) is unconstitutionally vague because it does not clearly delineate prohibited conduct and is subject to conflicting interpretations; and (3) proximately caused Maple's injuries. *See generally* ECF No. [52].

**II.   LEGAL STANDARD**

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019).

**III.    DISCUSSION**

Maple's claims against the City arise under 42 U.S.C. § 1983. As the Supreme Court explained in *Monell*, 436 U.S. at 694, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Rather, to state a § 1983 claim against the City, a plaintiff must allege that "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Id.* A plaintiff must "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (citing *Monell*, 436 U.S. at 694). In other words, the plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id*.

Accordingly, "[a] municipality 'causes' a violation where (1) it acts via 'an official policy enacted by its legislative body (e.g., an ordinance or resolution passed by a city council)'; (2) 'final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure'; or (3) 'on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority.'" *625 Fusion, LLC v. City of Fort Lauderdale*, 526 F. Supp. 3d 1253, 1260 (S.D. Fla. 2021) (quoting *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016)). Applying those principles, the Court turns to Maple's facial and as-applied challenges to the Ordinance.

### A. Maple's Facial Challenges to the Ordinance

The bulk of the parties' briefing addresses the merits of whether the Ordinance is facially unconstitutional under the First and Fourteenth Amendments. The Court commends the parties for their thorough briefing and lively debate at the Hearing. The Court further recognizes that "[i]n the context of a facial challenge, a purely legal claim is presumptively ripe for judicial review because it does not require a developed factual record." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009) (citations omitted).

Nonetheless, the Court concludes that the present motion-to-dismiss stage is not the appropriate juncture to address Maple's facial challenges against the Ordinance's constitutionality. Federal courts have a "duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration." *Cnty. Court of Ulster Cnty., N.Y. v. Allen*, 442 U.S. 140, 154 (1979) (citation omitted); *see also Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of

6

deciding them." (citations omitted)); *Fla. League of Professional Lobbyists, Inc. v. Meggs*, 87 F.3d 457, 461 n.3 (11th Cir. 1996) (discussing the reasons in favor of "sparing use of the power to void a statute on its face").

At this stage in the case, resolving the facial constitutional challenges to the Ordinance would not determine whether Counts 10 and 11 state claims for relief. Even if Maple is correct that the Ordinance is facially unconstitutional, she must additionally show that it was the "moving force" behind her injuries. *Brown*, 520 U.S. at 404. This is not a case in which a defendant in a criminal case is unquestionably harmed by the challenged statute. Rather, the charge against Maple has been dropped, the City contends that the Ordinance is not violated by "[s]imply videotaping an officer," ECF No. [46] at 8, and Maple's own allegations indicate that the Ordinance was a mere pretext for her arrest. *See* ECF No. [43] ¶ 77 (alleging that "to dissuade Ms. Maple from filing a federal civil rights complaint against Sgt. Stella," Defendants decided to "arrest her, maliciously prosecute her, and try their best to cover it up."). In short, it is questionable whether the Ordinance is truly at issue in this case. There is a significant factual dispute as to whether there is "a direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 404. "Because even a favorable decision on" Maple's facial challenges would not necessarily entitle her to relief, "powerful considerations of judicial restraint call upon [the Court] not to decide these constitutional issues." *Shahar v. Bowers*, 114 F.3d 1097, 1100 (11th Cir. 1997) (citing *Lyng*, 485 U.S. at 443-46).[1]

Thus, rather than deciding the merits of Maple's facial challenges, the appropriate inquiry at this juncture is whether Maple has sufficiently alleged constitutional violations "under the *Iqbal* pleading standard[.]" *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010) ("Rather than wading

---

[1] Conversely, if the Ordinance is constitutional on its face, Maple could still prevail on Counts 10 and 11 as applied constitutional challenges.

through the bog to determine exactly what level of scrutiny should be applied, and what constitutional protection there is, we will instead determine whether [plaintiff] enjoys *enough* First Amendment protection to overcome [defendant]'s motion to dismiss." (citing *Lyng*, 485 U.S. at 445)). The Court concludes that Maple has plausibly alleged that (a) the Ordinance is unconstitutional on its face under the First and Fourteenth Amendments; and (b) the Ordinance was the moving force behind her injuries. *See Brown*, 520 U.S. at 404-05. Thus, apart from the commingling issue discussed in Section C below, Maple's facial challenges are sufficiently alleged.

### B. Maple's As-Applied Challenges to the Ordinance

Turning to Maple's as-applied challenges, it is well-established that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory" for the actions of its employees. *Monell*, 436 U.S. at 691. "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably." *Brown*, 520 U.S. at 406. "Thus, 'recovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality" – that is, acts which the municipality has officially sanctioned or ordered.'" *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir. 1991) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986)).

Maple has alleged no acts taken by the City – apart from passing the Ordinance – that led to her injury. She alleges that an unlawful "practice immediately evolved after the ordinance's enactment," ECF No. [43] ¶ 42, but she fails to allege that any "final policymakers have acquiesced" in that practice. *625 Fusion,* 526 F. Supp. 3d at 1260. She asserts in a conclusory fashion that the Ordinance deprived her of her rights "with at least deliberate indifference," ECF

8

No. [43] ¶¶ 266, 270, but she fails to specify *who* acted with deliberate indifference, or which official policymaker condoned the Defendants' activity. As such, Maple has failed to allege that the City in any way "officially sanctioned or ordered" the acts of the individual Defendants in this case. *Brown*, 923 F.2d at 1479 (quotation marks omitted). In seeking to hold the City liable for the acts of its employees who "happened to apply the [Ordinance] in an unconstitutional manner," Maple's as-applied challenges impermissibly "rest on *respondeat superior*." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). As such, they are subject to dismissal.

### C. Commingling

The City additionally argues that Counts 10 and 11 must be dismissed because they commingle Maple's facial and as-applied constitutional challenges to the Ordinance. ECF No. [46] at 7 (citing Federal Rule of Civil Procedure 10(b)). The Court agrees. For the reasons discussed above, Maple must plead sufficient facts to support both her facial versus her as-applied challenges to the Ordinance. Her allegations within Counts 10 and 11 suffice to hold the City liable on the theory that the Ordinance is facially unconstitutional, but she must allege additional facts to support her as-applied challenges. Thus, the Court concludes that pleading the theories separately would add "clarity and precision" and facilitate resolution of this case. *Anderson v. District Bd. of Trustees of Cent. Fla. Comm. Coll.*, 77 F.3d 364, 366-67 (11th Cir. 1996). Accordingly, both counts are subject to dismissal under Rule 10(b); *see, e.g.*, *Fla. Carpenters Reg'l Council v. City of Miami Beach*, No. 09-civ-22329-ALTONAGA, 2009 WL 10699575, at *8 (S.D. Fla. Dec. 4, 2009) (dismissing commingled counts with leave to amend).

9

Case No. 21-cv-23960-BLOOM/Otazo-Reyes

IV.   **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The City's Motion, **ECF No. [46]**, is **GRANTED IN PART AND DENIED IN PART**.

2. Counts 10 and 11 of the Third Amended Complaint are **DISMISSED WITHOUT PREJUDICE**.

3. Maple has leave to file a Fourth Amended Complaint **on or before April 4, 2023**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 22, 2023.

_____
BETH BLOOM
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record